## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:10-CV-24392-JORDAN/McALILEY

YOUNG ISRAEL OF BAL HARBOUR,
INC.,

       Plaintiff,

v.

TOWN OF SURFSIDE,

       Defendant.

_____/

### DEFENDANT, TOWN OF SURFSIDE'S, *CORRECTED* MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant, TOWN OF SURFSIDE ("Town"), by and through its undersigned attorneys and pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, moves for the entry of an Order dismissing the Complaint filed by Plaintiff, YOUNG ISRAEL OF BAL HARBOUR, INC. ("Young Israel"), as follows:

### I. INTRODUCTION

The Complaint asks the Court to find that the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, et seq. ("RLUIPA"), and its Florida counterpart, the Florida Religious Freedom Restoration Act, § 761.01, et seq. Fla. Stat. ("FRFRA"), affirmatively require the Town to exempt Young Israel from its facially-neutral and consistently-applied land use standards and treat Young Israel in a special manner.

Since before 2004, Young Israel has successfully operated as a synagogue and conducted its religious services in a space occupying about 2,164 square feet on the second floor of a commercial building in the Town's business district. In 2008, Young Israel purchased the subject property located solely within a "residential" zoning district. Under the existing residential zoning, Young Israel concedes it has the right to use the subject property for its religious worship so long as it complies with the zoning restrictions applicable to every other parcel within this "residential" zoning district. DE 1 at ¶ 12. Instead of complying with the Town's existing restrictions, Young Israel now seeks to build an oversized structure (23,242 square feet) (hereinafter the "Proposed Structure") and to avoid compliance with the residential zoning restrictions (relating, without limitation, to the height of the building, the number of required parking spaces, and the set-back requirements) which the

Town has uniformly and consistently applied to all parcels of real property within this same zoning district.

As part of that effort, Young Israel has requested that the Town change its Code of Municipal Ordinances ("the Code"). Among other requests, Young Israel has requested that the Town change the zoning of the residentially-zoned real property at issue ("the Property"), amend the Town's Comprehensive Future Land Use Map, and amend various provisions of the Code relating to setbacks, building height, parking, and places of public assembly. When the Town failed to approve **some** of these extraordinary measures, Young Israel ignored the prescribed methods of seeking review and, instead, filed this lawsuit.

It is fundamental that RLUIPA does not amount to immunity from local land use regulation. Just like any other land user, religious institutions are required to apply for special exemptions, to file complete applications, and to follow existing zoning requirements. This reasonable approach is consistent with its legislative intent:

> This Act does not provide religious institutions with immunity from land use regulations, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay.

146 Cong. Rec. S7776 (2000).

In Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County, 450 F.3d 1295, 1313 (11th Cir. 2006), Circuit Judge Marcus also emphasized that claims seeking religious favoritism will not be tolerated: "The bottom line, fatal for Primera's statutory claim, is that RLUIPA's Equal Terms provision requires equal treatment, **not special treatment**." (emphasis added). In addressing a situation similar to the claims here, the Eleventh Circuit specifically noted that RLUIPA does not protect religious institutions from typical zoning restrictions like those at issue here:

> In addition to these burdens, the congregations suggest that they will not be able to find land or a facility sizable enough to accommodate their congregations in the permitted RD-1 district. That the congregations may be unable to find suitable alternative space does not create a substantial burden within the meaning of RLUIPA. As the Seventh Circuit noted, "whatever specific difficulties [the plaintiff church] claims to have encountered, they are the same ones that face all [land users], not

2

merely churches. The harsh reality of the marketplace sometimes dictates that certain facilities are not available to those who desire them." Love Church v. City of Evanston, 896 F.2d 1082, 1086 (7th Cir. 1990).

 The congregations also contend that the burden of requiring them to apply for a CUP constitutes a substantial burden on religious exercise. Requiring churches and synagogues to apply for CUPs allows the zoning commission to consider factors such as size, congruity with existing uses, and availability of parking. We have found that such reasonable "run of the mill" zoning considerations do not constitute substantial burdens on religious exercise.

Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227, n11 (11th Cir 2004).

As a preliminary matter, the Complaint suffers from several procedural and substantive defects which deprive Young Israel of standing and the Court of subject matter jurisdiction. Procedurally, (1) the RLUIPA claims are not ripe for judicial review, (2) Young Israel has failed to exhaust its administrative remedies, and (3) Young Israel lacks standing.  Substantively, the Complaint fails to state a claim upon which relief may be granted under RLUIPA, FRFRA, or section 43 U.S.C. 1983.  In particular, Young Israel's "substantial burden" claims in Counts I and IV are facially improper based upon the application of the Eleventh Circuit's analysis in Midrash. Young Israel's "equal terms" claims in Counts II and IV only establish conduct on the part of the Town to enforce its facially-neutral and consistently-applied land use standards to a specific proposed structure, and not conduct which subjected Young Israel to "unequal treatment" as required in Primera Iglesia, 450 F.3d at 1304.  Finally, Young Israel's First Amendment claim in Count III fails to allege the deprivation of a federally protected right by a final policy maker.  Because the Complaint is facially defective, it should be dismissed.

## II. BACKGROUND

### A. The History

1.      Surfside is a small coastal town north of the City of Miami Beach and south of Bal Harbour.  DE 1 at ¶ 9.  It comprises roughly one square mile.

2.      Young Israel is a Florida non-profit corporation that was incorporated on February 26, 1999, "to conduct a synagogue in strict accordance with the Orthodox Halachic interpretation of Judaism."  DE 1 at ¶¶ 1, 13.

3.      Because Young Israel believed it had outgrown its current location, it determined that it "must move and **should** construct a synagogue building."  DE 1 at ¶¶ 14, 16 (emphasis added).

4.      In December 2008, Young Israel purchased a parcel of real estate within the Town located on 96th Street between Abbott Avenue and Byron Avenue ("Property").[1]  DE 1 at ¶¶ 17, 25.

5.      The Property is designated on the Comprehensive Future Land Use Map as "low density residential," and it is zoned residential, or H30B.  DE 1 at 27; DE 1-6 at 2; SURFSIDE, FLA., CODE § 90-41.[2]

6.      "Places of public assembly," whether religious or secular, including "places of worship" are permitted in the "low density residential" and H30B districts pursuant to Ordinance Number 07-1479.  See DE 1, Ex. at 3; SURFSIDE, FLA., CODE §§ 90-2, 90-41.

7.      Despite inclusion within the area designated for "public places of assembly," any property so designated must comply with the zoning restrictions (such as the height, setback, and parking restrictions) applicable to the underlying residential zoning district in which the Property is located.  See SURFSIDE, FLA., ORD. NO. 2007-1479, § 90-245.

8.       The maximum height for any structure in the "low density residential" designation (and the H30B district) is 30 feet.  DE 1-6 at 2; SURFSIDE, FLA., CODE § 90-39.1.

9.      Young Israel's Proposed Structure would seat 371 people, be 40 feet in height, and include, among other features, a "social hall" on the third level.  DE 1 at ¶ 3; DE 1-4 at 6.

10.     To construct the Proposed Structure on the subject Property in the manner requested by Young Israel, at least four material changes to the Code must be implemented, including:

a.      An amendment to the Property's designation on the Comprehensive Future Land Use Map from "low density residential" to "general retail/services." DE 1 at 27; DE 1-6 at 2;

b.      A rezoning of the Property from the H30B residential zoning district to the

---

[1] Young Israel had identified the Property as early as 2005, and it entered into a conditional contract to buy it in 2006.  DE 1 at ¶¶ 17, 19.  The initial purchase contract was conditioned on re-zoning of the Property or issuance of special use permit or variance for the Property that would "permit construction of improvements on the Real Property for use of a synagogue acceptable to [the Plaintiff] in its sole and absolute discretion."  DE 1 at ¶ 19.  However, when Young Israel completed its purchase in December 2008, it did so without having obtained a special use permit or variance for the Proposed Structure.  DE 1 at ¶ 25.

[2] The Town's Code may be found at Municode.com.  For ease of reference, the relevant portions of the zoning regulations are attached hereto as **Exhibit A**.

SD-B40 commercial zoning district to allow, among other things, the construction of a 40 feet high structure.[3]  See Ex. A;  SURFSIDE, FLA., CODE § 90-41;

     c.     An amendment to the SD-B40 commercial zoning district so that the first floor prohibition on "places of assembly" would not apply to a single purpose building outside of the traditional downtown area.[4]  See DE  1 at ¶ 30;

     d.     An amendment to the Town's "Landscape Ordinance" to reduce the required setback for buildings in the SD-B40 commercial zoning district.  See DE 1 at ¶ 33.

11.     Applications for amendments to the Comprehensive Future Land Use Map and for rezonings are adjudicated through the same procedures as required by ordinance adoptions. SURFSIDE, FLA., CODE § 90-35(7)

12.     Young Israel's application for the amendment to the Comprehensive Future Land Use Map was removed from the agenda for the January 2010 meeting of the Town's Planning and Zoning Board. DE 1 at ¶¶ 27-28.  Young Israel does not allege that its application for the amendment to the Comprehensive Future Land Use Map was ever denied by the Town.  See DE 1.

13.     On May 10, 2010, the Town voted to reject a proposed Landscape Ordinance that would have reduced the setback requirements in the SD-B40 commercial zoning district .  DE 1 at 33.

14.     On May 11, 2010, the Town voted to reject a proposed amendment to the SD-B40 commercial zoning district which would have provided an exception to the first floor prohibition. DE 1 at ¶ 30.

---

[3] A reclassification on the Comprehensive Future Land Use Map and a rezoning of the Property are necessary because, among other reasons, the Town Charter provides that the density, intensity, and height of structures in the Comprehensive Future Land Use Map and the Code are only subject to change by being placed on the ballot at a regularly scheduled election of the Town and approved by a vote of the electors of the Town.  SURFSIDE, FLA., CHARTER § 4; CODE § 90-36.1(2)(b).

[4] Currently in the SD-B40 commercial zoning district, "places of worship" are only permitted on the second floor or higher.  DE 1 at ¶ 12; SURFSIDE, FLA., ORD. NO. 07-1479.  For ease of reference, this requirement is known as the "first floor prohibition."  Young Israel's current facility complies with the first floor prohibition.

### B. The Relief Provision In the Code

15.     Prior to Young Israel's application, the Town adopted a specific administrative procedure for individuals and entities that believe a zoning or land use decision rendered by the Town violated rights protected by RLUIPA or by FRFRA.  SURFSIDE, FLA., CODE § 90-99 (hereinafter referred to as the "Religious Relief Procedure").

16.     A person, including a religious assembly or institution, may request relief under the Religious Relief Procedure in writing by completing a religious land use relief request form. SURFSIDE, FLA., CODE § 90-99(1).

17.     Under the Religious Relief Procedure, the Town Commission has the authority to consider and act on requests for reasonable relief including the power to (1) grant the relief requested, (2) grant a portion of the request and deny a portion of the request, and/or impose conditions upon the grant of the request, or (3) deny the request, in accordance with federal law. SURFSIDE, FLA., CODE § 90-99(2).

18.     The Town does not impose any fees in connection with a request for reasonable relief under the Religious Relief Procedure.  SURFSIDE, FLA., CODE § 90-99(5).

19.     Young Israel did <u>not</u> utilize the Religious Relief Procedure.  DE 1 at ¶ 35.

### III. ANALYSIS

### A.  The Complaint Fails to Present a Justiciable Claim

A party asserting federal jurisdiction must carry the burden of satisfying the case-or-controversy requirement of Article III of the United States Constitution. <u>DaimlerChrysler Corp. v. Cuno</u>, 126 S. Ct. 1854, 1861 (2006). Both ripeness and standing are derived from the case-or-controversy requirement. <u>Midrash</u>, 366 F.3d at 1223 (11th Cir. 2004); <u>Fla. Assoc. of Rehab. Facilities, Inc. v. State of Florida Dept. of Health & Rehabilitative Servs.</u>, 225 F. 3d 1208, 1216 (11th Cir. 2000).

### 1.  Young Israel's RLUIPA Claims Are Not Ripe

Article III requires courts to consider whether a plaintiff's claims are ripe. U.S. Const. Art. III, § 2, cl. 1; <u>Nat'l Park Hospitality Ass'n v. Dep't of Interior</u>, 538 U.S. 803, 808 (2003); <u>see also</u> <u>Konikov v. Orange County</u>, 410 F.3d 1317, 1322 (11th Cir. 2005).  The ripeness doctrine keeps federal courts from deciding cases prematurely.  <u>Digital Props. v. City of Plantation</u>, 121 F.3d 586, 589 (11th Cir. 1997).  It "protects federal courts from engaging in speculation or wasting their

resources through the review of potential or abstract disputes." Id.; see also Konikov, 410 F.3d at 1322 (alteration and internal quotation marks omitted). "Courts must resolve . . . whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." Digital Props., 121 F.3d at 589 (internal quotation marks omitted).

To determine whether a claim is ripe courts evaluate: (1) "the fitness of the issues for judicial decision;" and (2) "the hardship to the parties of withholding court consideration." Coalition for the Abolition on Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1315 (11th Cir. 2000) (internal quotation marks omitted). In Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985), the Supreme Court developed specific ripeness requirements for land use disputes. It held that the takings claim at issue was "not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Id. at 186. Subsequent decisions applied this ripeness requirement to land use disputes implicating other constitutional and RLUIPA claims. See Grace Cmty Church v. Lenox Towhnship, 544 F.3d 609 (6th Cir. 2008); Murphy v. New Milford Zoning Comm'n, 402 F.3d 342 (2d Cir. 2005); Congregation Anshei Roosevelt v. Planning & Zoning Bd. of the Borough of Roosevelt, 338 Fed. Appx. 214, 2009 U.S. App. LEXIS 16266 (3d Cir. July 22, 2009).

In connection with land use regulations in general and RLUIPA cases specifically the "finality requirement" has been identified as "critical." Grace Cmty, 544 F.3d at 615 (citing Insomnia Inc. v. City of Memphis, 278 Fed. Appx. 609, 2008 WL 2121053, at *3 (6th Cir. 2008)). "The finality requirement has been applied to various constitutional claims arising out of land use disputes and requires that the 'governmental entity charged with implementing the regulations must have reached a final decision regarding the application of the regulations to the property at issue.'" Grace Cmty, 544 F.3d at 615 (6th Cir. 2008) (quoting Insomnia 278 Fed. Appx. at *3).

The Second, Third, and Sixth Circuits have all applied the finality requirement in RLUIPA cases to find that claims were not ripe for judicial review where the plaintiffs either failed to appeal a zoning decision or failed to seek a variance of a zoning restriction. In Murphy v. New Milford Zoning Commission, 402 F.3d 342 (2d Cir. 2005), the zoning officer issued a cease-and-desist order which the plaintiffs failed to appeal before filing a complaint alleging violations of the First Amendment and RLUIPA. Id. at 347. The Second Circuit determined that the claims were not ripe

because the plaintiffs did not appeal to the board. Id. at 352.  The court also noted that the failure to apply for a variance deprived the court of certainty as to future permitted future use of the property. Id. at 353.

The Second Circuit explained that, in land use cases, the finality requirement of the ripeness inquiry: (1) aids in the development of a full record; (2) provides the court with knowledge as to how a regulation will be applied to a particular property; (3) may obviate the need for the court to decide constitutional disputes if a local authority provides the relief sought; and (4) shows "the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." Id. at 348 (internal citations omitted).

The Third and Sixth Circuit found the Second Circuit's reasoning persuasive and applied its reasoning in two cases finding RLUIPA's claims were not yet ripe for adjudication.  In Congregation Anshei Roosevelt, 338 Fed. Appx. 214, the Third Circuit found that a congregation's RLUIPA and state law claims were not ripe where a zoning board had determined that the congregation's use of its facilities as a residential school (a yeshiva) violated certain zoning ordinances.  Id. at *2-4.  The court determined that since the zoning board permitted the congregation to apply for a variance, the congregation's failure to do so rendered the congregation's federal claims premature and subject to dismissal: "We thus affirm the District Court's dismissal of the complaint."  Id. at *5.

Similarly, in Grace Community Church v. Lenox Townhship, 544 F.3d 609 (6th Cir. 2008), the Sixth Circuit determined that a church's failure to seek reconsideration of or to appeal a planning commission's revocation of a variance rendered the church's RLUIPA and equal protection claims subject to dismissal for lack of ripeness: "Accordingly, the district court's judgment dismissing the Church's action as nonjusticiable for lack of ripeness is **AFFIRMED."**  Id. at 618 (emphasis and capital letters in original text).

Here, Young Israel's claims are not ripe for judicial determination because Young Israel cannot satisfy the "finality requirement."  First, **no decision** has yet been made by the Town with respect to a critical component of Young Israel's Proposed Structure: the change in zoning.  DE 1 at ¶¶ 27-28; DE 1-6 at 2; Zoning Map; 2; Surfside, Fla., Code § 90-41.  According to the face of the Complaint, Young Israel's applications to amend the Comprehensive Land Use Map (to change the Property's designation to "general retail/services") and to rezone the property (from H30B to SD-B40) have never been considered by the Town.  See DE 1 at ¶¶ 27-28.  Young Israel is therefore

asking the Court to find an alleged injury before the Town actually engaged in any conduct with respect to a potential rezoning of the Property.  In the end, the Complaint alleges a premature controversy that is not yet ripe for adjudication.  No decision has been made on the zoning issue, let alone a final one subject to review.  See Midrash, 366 F.3d at 1224-25 (holding that a challenge to the Town's procedure requiring applications for a conditional use permit was not yet ripe where plaintiffs had not applied for a conditional use permit).

Significantly, Young Israel cannot even meet the "finality requirement" with respect to the Town's actual conduct in (1) rejecting Young Israel's proposed amendment to the setback requirements and (2) rejecting Young Israel's proposed amendment to the first floor prohibition on places of assembly in the SD-B40 zoning district. DE 1 at ¶¶ 30, 33.  As confirmed in Complaint, although the Town has implemented a specific Religious Relief Procedure, Young Israel elected not to avail itself of that process.  DE 1 at ¶ 35.  Young Israel's admitted failure to utilize the available review procedure is fatal to its claim of ripeness.  See Grace Cmty Church, 544 F.3d at 612, 617; Murphy, 402 F.3d at 352-53; Congregation Anshei Roosevelt, 338 Fed. Appx. 214; Shenkel United Church of Christ v. North Coventry Township, No. 09-1823, 2009 U.S. Dist. LEXIS 106314 (E.D. Penn. Nov. 13, 2009).

Given the absence of any Town decision on the rezoning request, and given Young Israel's failure to employ the Religious Relief Procedure, all of the factors identified in Murphy weigh in favor of a dismissal.  As to the first factor, the Complaint presents the Court with an undeveloped record.  It cannot be known how the Town would have ruled on the zoning change or how it would have ruled when presented with additional information during the Religious Relief Procedure.  See Surfside, Fla. Code § 90-99(2) ("The commission may request additional information from the requesting party, specifying in sufficient detail what information is required.")

Additionally, by requiring Young Israel to file suit only after Young Israel received the Town's response to its proposed amendments, applications, and submissions under the Religious Relief Procedure, the Court ensures that any adjudication would be based upon the Town's actual application of its Code and not merely the speculation suggested in the Complaint.  In fact, permitting the Town to act may obviate the need for the Court to decide any dispute because the Code gives the Town the authority to provide various forms of relief.  See Surfside, Fla. Code § 90-99.  This approach also addresses the federalism concern raised by the fourth factor under

consideration.  See Shenkel United Church, U.S. Dist. LEXIS 106314 at *26 (finding federalism concerns strong because "[t]he Township is in the best position to interpret and apply its ordinances, and [court] will not deprive it of the chance to do it.").

In contrast, the Complaint establishes that no hardship prevents the administrative process from being completed.  See Coalition for the Abolition on Marijuana Prohibition, 219 F.3d at 1315. Young Israel currently provides religious services and has done so consistently since at least 2004. DE 1 at ¶ 1.  Having already purchased the Property, Young Israel cannot claim any risk of losing a unique opportunity based on time constraints.  Finally, the Town charges no fee for parties seeking relief under the Religious Relief Procedure.  Given the undisputed status of the administrative process, the Court should dismiss the Complaint because the claims are not yet ripe for adjudication.

### 2.  Young Israel Failed To Exhaust Administrative Remedies

Under RLUIPA, a municipality "may avoid the preemptive force of any provision of [the act] . . . by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden."  42 U.S.C. § 2000cc-3(e).

Here, pursuant to § 2000-cc-3(e), the Town adopted its Religious Relief Procedure as part of a specific administrative effort to address zoning decisions that allegedly violate RLUIPA.  See SURFSIDE, FLA., CODE § 90-99.  The Religious Relief Procedure permits any religious assembly or institution that believes it may have been the subject of an alleged RLUIPA violation to request relief in writing.  SURFSIDE, FLA., CODE § 90-99(1).  The Town Commission has the authority to consider and act on requests for reasonable relief, including the power to (1) grant the relief requested, (2) grant a portion of the request and deny a portion of the request, and/or impose conditions upon the grant of the request, or (3) deny the request, in accordance with federal law.  SURFSIDE, FLA., CODE § 90-99(2).  Young Israel admits it failed to take advantage of this procedure.

Given the Town's adoption of the Religious Relief Procedure pursuant to § 2000cc-3(e), Young Israel should not be permitted to assert its RLUIPA claims until that remedy has been exhausted.  Congress expressly determined that local zoning entities could avoid alleged RLUIPA violations by providing for specific exemptions.  Young Israel's RLUIPA claims are at odds with the statutory language and Congress's stated intent.  Moreover, by requiring completion of the Religious Relief Procedure, courts preserve judicial resources and avoid the risk of assuming roles

as "super land-use boards of appeals." See Congregation Anshei Roosevelt, 338 Fed. Appx. at 219 (stressing "the importance of the finality requirement and our reluctance to allow the courts to become super land-use boards of appeals. Land-use decisions concern a variety of interests and persons, and local authorities are in a better position than the courts to assess the burdens and benefits of those varying interests.") (internal citation omitted).

### 3.  Young Israel Lacks Standing

"It is by now axiomatic that '[i]n every federal case, the party bringing the suit must establish standing to prosecute the action.'" Primera Iglesia, 450 F.3d at 1304 (quoting Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004)).  Standing is the most significant doctrine of the case-or-controversy requirement.  Midrash, 366 F.3d at 1223.

In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.  Warth v. Seldin, 422 U.S. 490, 498 (1975).  The Supreme Court has identified three constitutional requirements for standing, all of which must be satisfied: (1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.  Granite State Outdoor Advertising, Inc. v. City of Clearwater, 351 F.3d 1112, 1116 (11th Cir. 2003).

As currently pled, the RLUIPA claims fail with respect to the "injury in fact" and "redressibility" requirements for standing.  "An 'injury in fact' requires the plaintiff to 'show that he **personally** has suffered some actual or threatened injury.'" Id. (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 472(1982) (emphasis added) (internal quotations omitted)).  An injury, in the context of standing, "requires infringement of an interest . . . protected by statute or otherwise."  Primera Iglesia, 450 F.3d at 1304.  It "must consist of obtaining compensation for, or preventing, the violation of a legally protected right."  Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 772 (2000) (citation omitted).

In Midrash, two synagogues (one being Young Israel) challenged several portions of the Town's Code arguing the ordinances violated various provisions of RLUIPA.  366 F.3d at 1218. The Code at the time prohibited places of worship from the business and tourists districts, while allowing private clubs in both.  Id. at 1219-20.  The synagogues rented space in the business district, and the Town attempted to enforce its zoning ordinance against them.  Id. at 1222.

In addressing standing, the Eleventh Circuit held that the synagogues could **only** challenge the ordinance pertaining to the business district because it had actually been applied to them.  Id. at 1223-24.  With respect to the tourist district, the Eleventh Circuit found that neither synagogue had standing to challenge that ordinance because "[n]either party [was] located in the tourist district, and neither party [had] concrete and specific plans to locate in there."  Id. at  1224 n9.

Here, the Property at issue is located in a residential zoning district and, according to the Complaint, Young Israel has failed to apply for a rezoning[5].  As a result, although Young Israel may be "close" to establishing its standing with respect to the enforcement of rights relating to property located in a commercial zoning district, according to the Complaint, Young Israel has not yet reached that significant legal threshold and will not be there until an application for rezoning has been rejected and the other administrative remedies exhausted.  Under the Eleventh Circuit's reasoning in Midrash, Young Israel simply lacks standing to challenge those sections of the Code that pertain to a commercially zoned property (as compared to its **residentially-zoned** Property).

"Redressibility" requires a likelihood that the injury will be redressed by a favorable decision."  Granite State Outdoor Advertising, 351 F.3d at 1116.  In the context of land use decisions, the Eleventh Circuit has held that a plaintiff whose application was denied on the basis of one provision in a municipality's zoning ordinance, but which could have been denied on the basis of some alternate but unchallenged regulation, does not have a redressable injury.  See Maverick Media Group, Inc. v. Hillsborough County, 528 F.3d 817, 820 (11th Cir. 2008); KH Outdoor, LLC v. Clay County, 482 F.3d 1299, 1303-04 (11th Cir. 2007).

Here, Young Israel seeks to build a Proposed Structure that exceeds the zoning restrictions pertaining to, among other things, the maximum height for the zoning district in which it is currently located.  DE 1 at 1-6 at 2; SURFSIDE, FLA., CODE § 90-41.  As a result, even if the Court where to find that the Town improperly rejected the proposed amendment to the setback requirements and the proposed amendment to the first floor prohibition, Young Israel would still be prohibited from building its Proposed Structure since the Property remains located in a residential zoning district

---

[5]  While the Town certainly understands that Young Israel may have intended to submit the project as a "package" for approval, at this point in that process, the Property remains in a residential zoning district, and the only action taken by the Town relates to issues associated with a parcel of real property located in a commercial zoning district.

with a maximum of height of 30 feet.  Again, the Complaint fails to allege any action on the part of the Town with respect to a potential rezoning request.  As a result, even if the Court were to find in favor of Young Israel on the preliminary issues actually raised in the Complaint, the relief would still fail to provide redress to Young Israel since such relief would still not be sufficient to allow the construction of its Proposed Structure.

### B.  Young Israel Has Failed To State Claims Upon Which Relief May Be Granted

#### 1.  The Substantial Burden Claims in Counts I and IV Are Facially Defective

Section 2000cc(a)(1) of RLUIPA prohibits land use regulations which impose substantial burdens on a religious institution's exercise of its beliefs unless such regulations are the least restrictive means of furthering a compelling government interest.  The Williams Island Synagogue, Inc. v. City of Aventura, 329 F. Supp. 2d 1319, 1325 (S.D. Fla. 2004).  Florida courts apply FRFRA in the same manner as RLUIPA with respect to substantial burden claims.  See Westgate Tabernacle, Inc. v. Palm Beach County, 14 So. 2d 1027, 1031 (Fla. 4th DCA 2009)(noting "We have held that the 'substantial burden' standard is the same under both FRFRA and RLUIPA," in ruling that "Neither FRFRA nor RLUIPA prohibits the application of valid, neutral zoning provisions to church property to curtail uses not permitted in the area.")(citations and internal quotes omitted).

Under both statutes, the first question to be answered is whether the disputed land use regulation imposes a substantial burden on a religious institution.  Williams Island Synagogue, 329 F. Supp. 2d at  1325; Westgate Tabernacle, 14 So. 2d at 1031.  A substantial burden consists of a "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly.  Thus a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct."  Midrash, 366 F.3d at 1227; see also  Westgate Tabernacle, 14 So. 2d at 1031.

Young Israel identifies two "burdens" that it alleges are "substantial" and therefore satisfy the first prong of its substantial burden claims.  First, it claims that it is substantially burdened in its religious exercise "because its membership has outgrown its current facilities and [it] is unable to engage properly in religious worship and study if it does not relocate."  DE 1 at ¶ 39.

This argument was expressly rejected by the Eleventh Circuit in Midrash.  In holding "that the congregations may be unable to find suitable alternative space does not create a substantial

burden within the meaning of RLUIPA," the Eleventh Circuit explained that "'whatever specific difficulties [the plaintiff synagogue] claims to have encountered, they are the same ones that face all [land users], not merely churches. The harsh reality of the marketplace sometimes dictates that certain facilities are not available to those who desire them.'" Id. (quoting Love Church v. City of Evanston, 896 F.2d 1082, 1086 (7th Cir. 1990)); see also Williams Island Synagogue, 329 F. Supp. 2d at 1327 ("Therefore, to the extent that Plaintiff appears to argue that the increasing size of its congregation somehow entitles it to relocate to a place of its choosing under RLUIPA unless Defendant can establish the existence of a compelling municipal interest, this interpretation of RLUIPA has been **squarely** **rejected** by the Eleventh Circuit.")(emphasis added); Westgate Tabernacle, 14 So. 2d at 1031 ("Although its shelter has grown beyond a Type 2 facility to a Type 3 facility because it now houses nearly 100 persons at a time, ... it has not proved that the [land use code] poses a substantial burden to its religious exercise.").

Second, Young Israel asserts that it will be substantially burdened "if it is forced to move to a location distant from its current location" because its "members are required by religious observance to walk to the synagogue on Sabbaths and Holidays" and "[m]oving the site of Plaintiff's Sabbath services a substantial distance from its current location will prevent Plaintiff's members from attending worship services on Saturdays and Jewish Holidays."  DE 1 at ¶ 39.

Again, this argument was expressly rejected by the Eleventh Circuit in Midrash.  In rejecting this identical substantial burden claim asserted by this same party, the Eleventh Circuit held that "[w]hile walking may be burdensome and 'walking farther' may be even more so, [it could not] say that walking a few extra blocks is 'substantial,' as the term is used in RLUIPA, and as suggested by the Supreme Court." 366 F.3 at 1228.  The Eleventh Circuit also cautioned that "[w]ere [it] to adopt the synagogues' reasoning, it would be virtually impossible for a municipality to ensure that no individual will be burdened by the walk to a temple of choice.  Municipalities that allow religious exemptions to alleviate even the small burden of walking a few extra blocks would run the risk of impermissibly favoring religion over other secular institutions, or of favoring some religious faiths over others."  Id.

As a result, the two burdens identified in the Complaint are legally insufficient to state valid claims under FRFRA and RLUIPA.  Moreover, this Court has found much more substantial alleged burdens were legally insufficient at the pleading stage.  In Hollywood Community Synagogue, Inc.

v. City of Hollywood, 430 F. Supp. 2d 1296 (S.D. Fla. 2006), the Court held that the plaintiff had failed to meet its burden of demonstrating that the city's denial of a special exception had substantially burdened its religious exercise. Id. at 1318-19.  The Court found that the "synagogue had not shown that its property carrie[d] unique religious significance or that other properties are not available that could accommodate its practices," but "merely offered vague and conclusory statements that it has a 'legal right' to be granted a [s]pecial [e]xception and that relocation would substantially burden its ability to continue to provide religious teaching and worship to the community." Id. at 1319.  The Court also held that "[s]uch bare and unspecific assertions are insufficient to support [the synagogue's] claims under RLUIPA section (a)(1)," and dismissed the claims.  Id.; see also The Episcopal Student Foundation v. The City of Ann Arbor, 341 F. Supp. 2d 691, 704 (E.D. Mich. 2004) (stating that although these "alternatives may be less appealing or more costly," neither RLUIPA, nor the Constitution, requires a municipality to subsidize the real estate market); Vineyard Christian Fellowship of Evansion, Inc. v. City of Evanston, 250 F. Supp. 2d 961, 986 (E.D. Ill. 2003) (holding that zoning ordinance that prohibited religious institution from conducting worship services in a district where it owned land did not substantially burden plaintiff's free exercise, despite the fact that "the congregation is forced to spend a considerable amount of money to rent space where worship services may be held.").

## 2. The Equal Terms Claim Is Facially Defective

The equal terms provision of RLUIPA states, "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).  The Eleventh Circuit held that the "natural perimeter" for consideration under this section is the category of "assemblies and institutions." Midrash, 366 F.3d at 1230.

There are four elements of an equal terms violation: (1) the plaintiff must be a religious assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly on less than equal terms, with (4) a nonreligious assembly or institution.  Primera Iglesia, 450 F.3d 1295 at 1307-08 (citing Midrash, 366 F.3d at 1232). Under the statute, the plaintiff bears the initial burden of "produc[ing] prima facie evidence to support a claim alleging a[n Equal Terms] violation." 42 U.S.C. § 2000cc-2(b); see Primera Iglesia, 450 F.3d at 1308.

In <u>Primera Iglesia</u>, the Eleventh Circuit identified "at least three distinct kinds of Equal Terms statutory violations: (1) a statute that facially differentiates between religious and nonreligious assemblies or institutions; (2) a facially neutral statute that is nevertheless "gerrymandered" to place a burden solely on religious, as opposed to nonreligious, assemblies or institutions; or (3) a truly neutral statute that is selectively enforced against religious, as opposed to nonreligious assemblies or institutions." 450 F.3d at 1308.  Here, Young Israel asserts the third kind of equal terms violation. It claims "the Defendant has implemented a land use regulation in a manner that treats a religious institution on less-than-equal terms with nonreligious institutions."  DE 1 at ¶ 42.

Under the third type of equal terms violation, "a neutral statute's <u>application</u> may violate the Equal Terms provision if it differentially treats <u>similarly</u> <u>situated</u> religious and nonreligious assemblies."  <u>Primera Iglesia</u>, 450 F.3d at 1311 (emphasis in original) (citing <u>Konikov</u>, 410 F.3d at 1327-29, and <u>Campbell v. Rainbow City</u>, 434 F.3d 1306, 1314 (11th Cir. 2006)("[D]ifferent treatment of dissimilarly situated persons does not violate the <u>equal</u> <u>protection</u> <u>clause</u>.") (internal quotation marks omitted)(emphasis in original)).  "A plaintiff bringing an as-applied Equal Terms challenge must present evidence that a <u>similarly</u> <u>situated</u> nonreligious comparator received differential treatment under the challenged regulation." 450 F. 3d at 1311 (emphasis in original). If a plaintiff offers no similarly situated comparator, then there can be no cognizable evidence of less than equal treatment, and the plaintiff has failed to meet its initial burden of proof.  <u>Id.</u>

To state a valid equal terms claim, Young Israel must allege that it was treated differently than similarly-situated nonreligious assemblies.  However, beyond the formulaic recitation of the law, the Complaint fails to allege different treatment between it and any similarly situated entity. Paragraphs 44 and 45 merely cite alleged comments suggesting an intent to deny the proposed amendments because the project would "bring no benefit to the town."[6] First, the alleged statements fail to establish any improper motive attributable to the Town.  Second, such self-serving statements of alleged discriminatory animus are completely irrelevant to an as-applied equal terms claim.  <u>See</u> <u>Primera Iglesia</u>, 450 F.3d at 1311; <u>Konikov</u>, 410 F.3d at 1327-29; <u>Midrash</u>, 366 F.3d at 1232.

As a result, the two statements to be analyzed for establishing Young Israel's equal terms claims are: (1) that "[t]he Surfside Town Commission has, on several occasions, approved

---

[6] The Town has reviewed the video and audio recordings of the referenced meetings and categorically denies that such statements or even sentiments were expressed.

amendments to Surfside's Zoning Code to permit the construction of many residential buildings as well as the Defendant's new recreational building on the ocean, and its City Hall," which "are buildings of nonreligious individuals, entities and institutions," DE 1 at ¶ 43, and (2) that "[i]f the proposed amendments to the Zoning Code had concerned a commercial nonreligious institution rather than a synagogue, they would have been approved by the Town Commission." DE 1 at ¶ 44.

Both statements are insufficient as a matter of law to state an equal terms claim. First, paragraph 43 fails allege any facts establishing the existence of a **similarly situated** non-religious entity that received more favorable treatment on a similar project. See Primera Iglesia, 450 F.3d at 1311 ("If a plaintiff offers no similarly situated comparator, then there can be no cognizable evidence of less than equal treatment[.]"). The Complaint fails to assert any alleged facts establishing the features of any other entity or project which indicates any relevant similarities to Young Israel or its project.

Second, Young Israel's hypothetical assertion as to what the Town would have done is the type of "naked assertion" rejected by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). In Iqbal, the Supreme Court explained that mere speculation is insufficient under Rule 8:

> The pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement.

Iqbal, 129 S.Ct. at 1949 (internal citations omitted).

Here, the Complaint includes only the conclusion that the various changes requested by Young Israel to the Town's various land use provisions are some how vaguely "comparable" to those that were requested by other entities in connection with other unspecified projects. See DE 1 at ¶ 43. In addressing a similar claim that two projects were similarly situated but treated differently, the court in Primera Iglesia conducted a comprehensive comparison of numerous features, including the type of relief requested (zoning versus variance), the decision maker (board of adjustment versus zoning board) and the specific provision to be changed. 450 F.3d at 1311-12. After reviewing the record, the Court concluded that no unequal treatment had been established: "Primera's evidence

establishes only that the School received *different* treatment, not *unequal* treatment." (italics in original text).  The Complaint conspicuously omits any allegations establishing any similarities between its efforts to build is Proposed Structure and the efforts of any other non-religious entity to build a comparable structure.  Instead, the Complaint only alleges, in conclusory fashion, some vague dissimilar treatment. Such a claim is not actionable, and the equal terms claim fails as a matter of law.

### C.  The Section 1983 Claim is Separately Subject to Dismissal

In Count III, Young Israel attempts to assert a separate claim under 42 U.S.C. § 1983 for alleged violations of its rights under the First Amendment.  DE 1 at ¶¶ 46-49.  Procedurally, the Town's arguments supporting dismissal based upon a lack of standing apply equally to the 1983 claim.  Substantively, the 1983 claim fails to allege critical facts establishing a valid claim against the Town.  As a result, the 1983 claim is separately subject to dismissal.

### 1.  The First Amendment Claims Are Not Ripe

Young Israel's RLUIPA and FRFRA claims are coextensive of its 1983 claim.  In particular, the alleged constitutional deprivation arose from a single act on the part of the Town -- the "vote" relating to the first floor prohibition:   "The **vote** of the Town Commission against 'providing a limited exception to the first floor prohibition ...'... was made with the stated intention of preventing Plaintiff from constructing a Jewish Orthodox Synagogue on its property." DE 1 at ¶¶ 47 (emphasis added).  The same "vote" is also the subject of paragraphs 46 and 48 of the Complaint.  See DE 1 at ¶¶ 46, 48.  No other affirmative conduct is referenced in the 1983 claim.  See DE 1 at ¶¶ 46-49.

In a similar case where a First Amendment claim and a RLUIPA claim were factually similar, the Second Circuit applied the finality prong of the Williamson ripeness analysis to the First Amendment claim and dismissed that separate claim for lack of ripeness.  Murphy, 402 F.3d at 350 ("Relatedly, we do not believe it necessary to distinguish the RLUIPA claim from the *First Amendment* Free Exercise claim when it comes to our ripeness inquiry.")(italics in original text).

In Insomnia, the Sixth Circuit applied Murphy in finding that a First Amendment claim was properly dismissed as "unripe." 278 Fed. App. at 616.  The court discussed several federal opinions in noting that the trend in federal law is to apply the Williamson finality requirement to claims arising from land use disputes.  Id. at 613; see also Grace Cmty., 544 F.3d at 613-14, 616 (finding that "Finality is prerequisite to litigation[,]" where the RLUIPA claim was related to the 1983 equal

protection claim); <u>Congregation Anshei</u>, 338 Fed. Appx. at 217 ("Subsequent decisions applied this [<u>Williamson</u>] ripeness requirement to land use disputes implicating other constitutional claims."); <u>Shenkel United Church</u>, 2009 U.S. Dist. LEXIS 106314 at *13 (" ... the Church ignores persuasive authority that counsels in favor of applying *Williamson's* prong-one ripeness standard to land-use disputes arising from the *First Amendment* and RLUIPA claims.")(italics in original text). The court also noted that in light of the "policy and doctrinal considerations," the "district court acted properly" in dismissing the First Amendment claims based upon a lack of ripeness. <u>Insomnia</u>, 278 Fed. App. 616.

Here, Young Israel's First Amendment claims are redundant of its RLUIPA and FRFRA claims. According to Count III, the only issue is whether a vote to enforce the first floor prohibition equates with a deprivation of Young Israel rights under the First Amendment. Given these circumstances, the Court here should apply the <u>Williamson</u> ripeness analysis to the First Amendment claims in Count III and dismiss those claims along with Counts I, II, and IV.

### 2. The First Amendment Claims Are Substantively Defective

Count III is separately defective because it fails to identify an unconstitutional policy or custom to deprive Young Israel of its First Amendment rights. <u>See</u> <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 690-91 (1977). Significantly, legal conclusions regarding customs and policies without facts are legally insufficient. <u>See</u> <u>Cannon v. Macon County</u>, 1 F. 3d 1558, 1565 (11th Cir 1993)(subsequent history omitted); <u>Cox v. McRaley</u>, 993 F. Supp. 1452, 1455 (M.D. Fla. 1998)(noting that "nondescript, conclusory reference to an abstract custom or policy" is insufficient to state a section 1983 claim).

Apart from insinuations of an improper motive to burden religious freedom[7], the Complaint merely alleges a "vote" to maintain the status quo regarding objective building standards. The Complaint conspicuously omits any allegations regarding a Commission-wide attack on Young Israel's religious freedom. <u>See</u> <u>Matthews v. Columbia County</u>, 294 F. 3d 1394, 1297 (11th Cir. 2002)("Because policymaking authority rests with the Commission as an entity, the County can be subject to liability **only** if the Commission itself acted with an unconstitutional motive.").

---

[7] Again, statements that Young Israel attributes to members of the Town Commission are not supported by any citation, are not reflected in the applicable meeting transcripts, and are categorically denied by the Town and its Commissioners.

The Complaint admits that Young Israel is now presently operating a synagogue in the Town. DE 1 at ¶ 1. The Complaint also admits that Young Israel presently conducts religious services from its synagogue only 150 feet from the Property where it intends to build the Proposed Structure. DE 1 at ¶ 1. Finally, the Complaint admits that Young Israel has enjoyed substantial growth in its membership while located in the Town's commercial zoning district. DE 1 at ¶¶ 14, 16. Read carefully, the Complaint never asserts a specific intent to abridge any religious practice, any religious expression, or any religious association. Instead, the Complaint merely speaks in terms of alleged opposition to a **particular physical structure** -- a "40-foot-high" improvement to real property -- and not to any form of expression protected by the First Amendment: "The purpose ... of the vote ... is to prevent Plaintiff from proceeding with the construction of **the** planned synagogue **building** on the purchased property[.]" DE 1 at ¶ 32 (emphasis added); see also DE 1 at ¶ 37 ("The necessary consequence of the vote ... is to make impossible for the Plaintiff to construct **the** synagogue **building**[.]")(emphasis added).

While the Complaint does assume that the effect of the vote is to place a "substantial burden on" Young Israel's First Amendment rights, that conclusion cannot be reconciled with Young Israel's failure to assert that construction of **any** synagogue on the Property has been prohibited by the Town. In fact, if Young Israel were to submit plans that satisfied the Town's building requirements for residential zoning districts, Young Israel would be entitled to build a synagogue on the Property. The dispute does not involve the nature of the building's use as a synagogue. Instead, the dispute involves the objective criteria associated with the construction of a 40-foot-high building, including its height, overall dimensions, set backs, parking, and impact on its residentially-zoned neighbors. In the end, the Complaint alleges no deprivation of religious freedom, but only the right to construct a specific kind of building. The fact that Young Israel may wish to use that building for religious purposes does not transform its "run of the mill" zoning dispute into a First Amendment claim. See Midrash, 366 F. 3d at 1217 n11. ("We have found that such reasonable 'run of the mill' zoning considerations do not constitute substantial burdens on religious exercise."). As a result, the First Amendment claim is substantively defective and subject to dismissal.

**WHEREFORE**, Defendant, TOWN OF SURFSIDE, requests entry of an Order dismissing the Complaint in its entirety.

Dated:  February 2, 2011

**Attorneys for the Town of Surfside:**

*s/ Jeffrey J. Hochman*
JEFFREY J. HOCHMAN
Florida Bar No. 902098
HUDSON C. GILL
Florida Bar No. 15274
Johnson, Anselmo, Murdoch, Burke
Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, FL 33304
(954) 463-0100 - Telephone
(954)463-2444 - Facsimile
hochman@jambg.com
hgill@jambg.com

And

*/s/Joseph H. Serota*
JOSEPH H. SEROTA
Florida Bar No. 259111
SUSAN L. TREVARTHEN
Florida Bar No. 906281
Weiss Serota Helfman Pastoriza Cole &
Boniske, P.L.
2525 Ponce de Leon Boulevard, Suite 700
Coral Gables, FL 33134
(305) 854-0800 - Telephone
(305) 854-2323 - Facsimile
jserota@wsh-law.com
strevarthen@wsh-law.com

And

*/s/ Gerald J. Houlihan*
GERALD J. HOULIHAN
Florida Bar No. 0458430
Houlihan & Partners, P.A.
2332 Galiano Street, Second Floor
Miami, Florida 33134
(305) 460-4091 - Telephone
(305) 397-0955 - Facsimile
houlihan@houlihanlaw.com

21

And

 */s/Lynn M. Dannheisser*
LYNN M. DANNHEISSER
Florida Bar No. 218065
Town of Surfside
9293 Harding Avenue
Surfside, FL 33154
(305) 861-4863 - Telephone
(305) 861-1302 - Facsimile
ldannheisser@townofsurfsidefl.gov


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 2, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record or *pro se* parties identified on the Mailing Information for Case 10-CV-24392-Jordan/McAliley. Counsel of record currently identified on the Mailing Information System list to receive e-mail notices for this case are served via Notices of Electronic filing generated by CM/ECF. Counsel of record who are not on the Mailing Information list to receive e-mail notices for this case have been served via U.S. mail.

By: */s/ Jeffrey L. Hochman*
JEFFREY L. HOCHMAN
Fla. Bar No. 902098
HUDSON C. GILL
Fla. Bar. No. 15274

*Young Israel v. Town of Surfside: 1:10-CV-24392*

## SERVICE LIST

**Attorneys for Young Israel of Bal Harbour, Inc.:**

**ISAAC M. JAROSLAWICZ, ESQ.**
Jaroslawicz Law Offices
1177 Kane Concourse
Suite 222
Bay Harbor Islands, FL 33154
(305) 398-7739 - Telephone
(786) 206-3575 - Facsimile
Isaac@mylawyerisaac.com

**NATHAN LEWIN, ESQ.**
Lewin & Lewin, LLP
1775 Eye Street, NW
Suite 850
Washington, D.C.  20036
(202) 828-1000 - Telephone
(202) 828-0909 - Facsimile
Nat@lewinlewin.com

**Attorneys for Town of Surfside:**

**JEFFREY J. HOCHMAN, ESQ.**
Johnson, Anselmo, Murdoch, Burke, Piper &
Hochman, P.A.
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, FL 33304
(954) 463-0100 - Telephone
(954) 463-2444 - Facsimile

And

**JOSEPH H. SEROTA, ESQ.**
**SUSAN L. TREVARTHEN, ESQ.**
Weiss  Serota  Helfman  Pastoriza  Cole  &
Boniske, P.L.
2525 Ponce de Leon Boulevard, Suite 700
Coral Gables, FL 33134
(305) 854-0800 - Telephone
(305) 854-2323 - Facsimile

And

**GERALD J. HOULIHAN, ESQ.**
Houlihan & Partners, P.A.
2332 Galiano Street, Second Floor
Miami, Florida 33134
(305) 460-4091 - Telephone
(305) 397-0955 - Facsimile

And

**LYNN M. DANNHEISSER, ESQ.**
Town of Surfside
9293 Harding Avenue
Surfside, FL 33154
(305) 861-4863 - Telephone
(305) 861-1302 - Facsimile